IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LOUSIVILLE

| | |
|---|---|
| MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, | :<br>:<br>: |
| | : ELECTRONICALLY FILED |
| Plaintiff, | :<br>: |
| v. | : CASE NO: **3:08cv-523 M** |
| SHAUN CHELF, LAURA CLARK, THOMAS KELLY and DONALD MILLER | :<br>:<br>: |
| Defendants. | : |

## COMPLAINT

Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch"), by its undersigned attorneys, hereby brings the following Complaint for injunctive relief against Defendants Shaun Chelf ("Chelf"), Laura Clark ("Clark"), Thomas Kelley ("Kelley") and Donald Miller ("Miller") (sometimes collectively referred to herein as "Defendants") for (i) breach of contract; (ii) misappropriation of trade secrets; (iii) conversion of confidential business information; (iv) breach of duty of loyalty; and (v) unfair competition, and in support thereof, avers as follows:

### I.  PARTIES

1.  Merrill Lynch is a Delaware corporation maintaining its principal place of business at the World Financial Center, North Tower, New York, New York and transacting business in this judicial district through a branch office located in Louisville, Kentucky. Merrill Lynch is a citizen of the States of Delaware and New York.

2. Defendant Chelf is a former Financial Advisor of Merrill Lynch's Louisville, Kentucky office. Chelf is a citizen of Kentucky residing at 4814 Bridle Bend Way, Louisville, KY 40299.

3. Defendant Clark is a former Financial Advisor of Merrill Lynch's Louisville, Kentucky office. Clarke is a citizen of the Commonwealth of Kentucky residing at 3119 Wynbrooke Circle, Louisville, KY 40241.

4. Defendant Kelley is a former Financial Advisor of Merrill Lynch's Louisville, Kentucky office. Kelley is a citizen of the Commonwealth of Kentucky residing 9807 Flowering Grove Place, Louisville, KY 40241.

5. Defendant Miller is a former Financial Advisor of Merrill Lynch's Louisville, Kentucky office. Miller is a citizen of the Commonwealth of Kentucky residing at 6125 Deep Creek Drive, Prospect, KY 40059.

6. These individuals worked together as a team at Merrill Lynch, jointly servicing Merrill Lynch customers.

## II. JURISDICTION AND VENUE

7. Jurisdiction exists by virtue of diversity of citizenship, 28 U.S.C. § 1332. The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs. Immediate injunctive relief is sought pursuant to Federal Rule of Civil Procedure 65(a).

## III. THE FACTS

8. Merrill Lynch is engaged in the business of, inter alia, providing financial services.

9. Chelf commenced his employment with Merrill Lynch on or about April 3, 2000.

10. Clark commenced her employment with Merrill Lynch on or about September 4, 2000.

11. Kelley commenced his employment with Merrill Lynch on or about March 6, 1995.

12. Miller commenced his employment with Merrill Lynch on or about October 1, 1973.

13. As a condition of their employment, Defendants executed a number of agreements and attestations confirming the confidentiality of Merrill Lynch's customer information, prohibiting its use or disclosure to third parties, and prohibiting the solicitation of certain Merrill Lynch customers they serviced or whose names became known to them for one year following the termination of their employment with Merrill Lynch.

14. Specifically, Defendants each executed an Employment Agreement known either as a <u>Financial Consultant Employment Agreement and Restrictive Covenants</u> or as an <u>Account Executive Agreement</u>.

15. Defendants Chelf, Clark and Kelley executed a <u>Financial Consultant Employment Agreement and Restrictive Covenants</u>. Defendant Miller executed an <u>Account Executive Agreement</u>. Aside from their titles, these Agreements contain similar restrictions and will be collectively referred to herein as "Employment Agreements." (A copy of each Defendant's Employment Agreement is attached hereto, made part hereof, and marked as Exhibits "**A**" through "**D**").

16.   Defendants Chelf, Clark and Kelley agreed in their respective Employment Agreements, inter alia, that:

> 1.   **All records, whether original, duplicated, computerized, memorized, handwritten, or in any other form, and all information contained therein, including names, addresses, phone numbers, and financial information of any account, customer, client, customer lead or prospect ("Account"), are confidential and are the sole and exclusive property of Merrill Lynch**. This information, whether provided to me by Merrill Lynch or by any Account, is entrusted to me as an employee and sales representative of Merrill Lynch. I will not use this information or remove any such records from the Merrill Lynch office except for the sole purpose of conducting business on behalf of Merrill Lynch. **I agree not to divulge or disclose this information to any third party and under no circumstances will I reveal or permit this information to become known by any competitor of Merrill Lynch either during my employment or at any time thereafter.**
>
> This information is extremely valuable to Merrill Lynch and Merrill Lynch takes all reasonable measures to maintain its confidentiality and to guard its secrecy. This information is not generally known outside Merrill Lynch and within Merrill Lynch this information is confidential and used only on a "need to know" basis. This information is developed and acquired by great expenditures of time, effort, and money. This information is unique and cannot be lawfully duplicated or easily acquired. Consequently, I agree that these records and the information contained therein are the property of Merrill Lynch and are deserving of trade secret status and protection.
>
> 2.   **If, at any time, I resign from Merrill Lynch**, provoke my termination, or am terminated for cause, **I agree that for a period of one year following my termination I will not solicit by mail, by phone, by personal meeting, or by any other means,** either directly or indirectly, **any Account whom I served or whose name became known to me during my employment at Merrill Lynch in any office and in any capacity**. My agreement "not to solicit" means that I will not, during my employment and for a period of one year thereafter, initiate any contact or communication, of any kind whatsoever, for the purpose of inviting, encouraging or requesting any Account:
>
>> (a) to transfer from Merrill Lynch to me or to my new employer, or

> (b) to open a new account with me or with my new employer, or
>
> (c) to otherwise discontinue its patronage and business relationship with Merrill Lynch.

See Exhibits "**A**" through "**C**" at ¶¶ 1-2 (emphasis added in part).

17. Defendant Miller agreed in his Employment Agreement, inter alia, that:

> 1. All records of Merrill Lynch, including the names and addresses of the clients are and shall remain the property of Merrill Lynch at all times during my employment with Merrill Lynch and after termination for any reason of my employment with Merrill Lynch and that none of such records nor any part of them is to be removed from the premises of Merrill Lynch either in original form or in duplicated or copied form, and that the names and addresses and other facts in such records are not to be transmitted verbally except in the ordinary course of conducting business for Merrill Lynch.
>
> 2. **In the event of termination of my services with Merrill Lynch for any reason I will not solicit any of the clients of Merrill Lynch whom I served or whose names became known to me while in the employ of Merrill Lynch in any community or city served by the office of Merrill Lynch or any subsidiary thereof, at which I was employed at any time for a period of one year from the date of termination of my employment**. In the event that any of the provisions contained in this paragraph and/or paragraph (1) above are violated I understand that I will be liable to Merrill Lynch for any damages caused thereby.

See Exhibit "**D**" at ¶¶ 1-2 (emphasis added in part).

18. In exchange for these conditions of employment and consideration, Merrill Lynch provided the following:

> (a) employment of Defendants as financial advisors in a sales capacity or in a sales position;
>
> (b) compensation for their services;

(c) training, opportunities, support services, and facilities, including reassignment of accounts, walk-ins, prospective customer leads, and advertising; and

(c) other good and valuable consideration.

19. Merrill Lynch provided the above considerations to Defendants and has satisfied all conditions precedent.

20. More specifically, Merrill Lynch compensated Defendants at all times during their employment with Merrill Lynch, provided Defendants with introductory and continuing on-the-job training as financial advisors, provided Defendants with extensive support services, paid for facilities, computer equipment, market reporting services, and all other business expenses, provided Defendants with abundant sales opportunities, registered Defendants with the Financial Industry Regulatory Authority ("FINRA") (formerly the National Association of Securities Dealers) and various state agencies, and provided Defendants with all Merrill Lynch benefits, systems, and support at all times.

21. In addition to the foregoing, Merrill Lynch provided Defendants with office facilities, secretarial services, clearing services, operational systems, product inventory, sales assistants, research, the benefit of Merrill Lynch advertising, goodwill and name recognition, access and use of experts in asset management, tax, estate planning and insurance, and with promotional marketing and sales support.

22. Merrill Lynch also provided Defendants with customer accounts, customer referrals, reassignments of former and current Merrill Lynch accounts, customer leads and new accounts generated by Merrill Lynch's national advertising campaign, from local seminars, from mailers, from "walk-in" and "call-in" customers, and from lists purchased

and acquired by Merrill Lynch. By virtue of Defendants' employment at Merrill Lynch, Defendants gained access to the books and records of Merrill Lynch, the confidential information contained therein, and especially the identity of Merrill Lynch customers, including their names and addresses, financial statements, investment objectives, assets, net worths, investment histories, and the securities held by these customers in their Merrill Lynch accounts.

23.  As a result of the foregoing, Defendants acquired access to Merrill Lynch accounts representing over **$232,000,000** in assets under management and generating over **$1,900,000** in commissions annually.

24.  In consideration of the foregoing benefits and opportunities provided by Merrill Lynch to Defendants, Defendants Chelf, Clark and Kelley <u>expressly consented</u> in their Employment Agreements to the issuance of a temporary restraining order and a preliminary injunction in court in the event they breached the terms of their respective contracts.

25.  In pertinent part, Defendants Chelf, Clark and Kelley agreed in their respective Employment Agreements that:

> 4.  **In the event I breach any of the covenants of paragraphs 1, 2 or 3, I agree that Merrill Lynch will be entitled to injunctive relief**. I recognize that Merrill Lynch will suffer immediate and irreparable harm and that money damages will not be adequate to compensate Merrill Lynch or to protect and preserve the status quo. Therefore, **I CONSENT TO THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER or A PRELIMINARY or PERMANENT INJUNCTION ordering:**
>
> > (a) **that I immediately return to Merrill Lynch all records whether original, duplicated, computerized, handwritten, or in any other form whatsoever, and that I be enjoined and restrained**

7

> **from using or disclosing any information contained in such records; and**
>
> (b)  **that, for a period of one year, I be enjoined and restrained from soliciting any Account whom I served or whose name became known to me while employed by Merrill Lynch, in any office and in any capacity; and**
>
> \* \* \* \* \* \*
>
> 5.  For the purposes of paragraph 4, I agree to submit to, and confer exclusive jurisdiction on, the United States District Court or the State Court which has original jurisdiction for judicial district or county in which I last worked for Merrill Lynch.  This Agreement shall be construed, governed by, and enforced in accordance with the laws of said jurisdiction.

Exhibits "**A**" through "**C**" at ¶¶ 4 and 5 (emphasis added in part).

26. Defendants resigned, without prior notice, from Merrill Lynch on Friday, September 26, 2008, and immediately joined J.J.B. Hilliard, W.L. Lyons, LLC ("Hilliard Lyons") a competitor securities firm located Louisville, KY, as indicated by their respective resignation letters.  See Exhibits "**E**" through "**H**".

27. Following Defendants' resignation, Merrill Lynch's Information Technology Specialist Gerry Weber conducted forensic reviews on September 26, 2008, of each of the Defendants' Merrill Lynch computer workstations.  Mr. Weber also reviewed the workstation for Defendants' Merrill Lynch Client Associates, Scarlett Fielding and Suzanne Stormes, who also resigned from Merrill Lynch on September 26, 2008 to assist Defendants at Hilliard Lyons.  The forensic investigation revealed that Defendants Chelf, Clark and Kelley downloaded confidential and proprietary information onto removable storage devices, commonly referred to as a thumb drives, in the days

leading up to their resignations. See Affidavit of Gerry Weber attached hereto as Exhibit "**I**". Defendants remain in possession of the thumb drives.

28. Additionally, Merrill Lynch has learned that customers formerly serviced by Defendants received letters from Defendants on the same day as their resignation. Most egregiously, Defendants enclosed a thumb drive in each letter which contained an "archive" of the respective customer's confidential and proprietary Merrill Lynch account information. See Affidavit of Merrill Lynch Regional Business Director Jeanne Smith attached hereto as Exhibit "**J**".

29. The letters containing the thumb drives were sent unsecured via first class mail from outside of the Merrill Lynch Louisville office and while Defendants were still employed with Merrill Lynch.

30. Defendants did not have the authority to send such highly confidential information, especially in such an unsecure manner, to the Merrill Lynch customers that they serviced.

31. It was not Defendants' practice to send such confidential information electronically stored on removable storage devices to the Merrill Lynch customers they serviced.

32. Defendants' sole purpose in sending each Merrill Lynch customer an archive of the customer's confidential Merrill Lynch records, the day before Defendants resigned, was an attempt to gain access to Merrill Lynch confidential and proprietary information for their own benefit and the benefit of Hilliard Lyons.

33. Moreover, forensic examination of Defendants' Merrill Lynch workstations indicates that the thumb drives that Defendants sent to each customer were

produced on a computer(s) outside of Merrill Lynch. Thus, Defendants remain in possession of such information.

34. Based on the foregoing, Merrill Lynch believes that Defendants are converting, to their personal use and gain, the information contained in the records of Merrill Lynch, the property of Merrill Lynch, the names and addresses and other confidential customer information used to conduct business at Merrill Lynch, the trade secrets of Merrill Lynch, Merrill Lynch marketing and promotional techniques, and the goodwill generated, directly and indirectly, by their association with Merrill Lynch, and are doing so by means of, inter alia, preparing to solicit and/or soliciting the Merrill Lynch customers whose accounts they serviced and whose names became known to them while in the employ of Merrill Lynch, as well as Merrill Lynch customer prospects.

35. Merrill Lynch alleges that Defendants are preparing to engage in and have engaged in, inter alia, the following acts:

(a) conversion of the information contained in confidential Merrill Lynch business records, specifically including the names, addresses, telephone numbers, and possibly other confidential financial information of the customers they serviced at Merrill Lynch and Merrill Lynch customer prospects whose names became known to them at Merrill Lynch;

(b) transmitting verbally, in writing, or otherwise to their new employer and/or others clients' names, addresses, and other information contained in the records of Merrill Lynch and described in sub-paragraph (a);

    (c)  soliciting and/or preparing to solicit Merrill Lynch's clients to terminate their relationship with Merrill Lynch and transfer their accounts to Hilliard Lyons; and

    (d)  other such acts contrary to the terms, conditions, and provisions of Defendants' agreements and other Merrill Lynch policies.

36. Defendants' conduct was and is in furtherance of a scheme to obtain and to convert to personal use and gain the information contained in records of Merrill Lynch, the property of Merrill Lynch, the names and possibly other confidential customer information used to conduct business at Merrill Lynch, including customer telephone numbers, addresses and/or other confidential financial information, the trade secrets of Merrill Lynch, and the goodwill generated, directly and indirectly, by their association with Merrill Lynch, and to do so by means of, <u>inter alia</u>, solicitation of customers of Merrill Lynch serviced by Defendants and whose names became known to Defendants while in the employ of Merrill Lynch.

37. Merrill Lynch believes and, therefore, avers that:

    (a)  Defendants have possession or control of Merrill Lynch confidential customer information, Merrill Lynch proprietary information, and/or Merrill Lynch trade secrets;

    (b)  Defendants have used, and will continue to use, confidential customer information to solicit Merrill Lynch accounts to divert the business of Merrill Lynch customers from Merrill Lynch to Defendants' new employer, Hilliard Lyons; and

(c)     Defendants will otherwise continue to engage in acts constituting a breach of the terms of their Merrill Lynch contract and Merrill Lynch policies; a breach of their respective fiduciary duties; and other tortious conduct, including conversion of trade secrets and unfair competition.

## COUNT I
## INJUNCTIVE RELIEF

38.     The averments of Paragraphs 1 through 37 are incorporated by reference herein with the same force and effect as if set forth in full below.

39.     By virtue of the foregoing, Merrill Lynch has demonstrated a likelihood of success on the merits and that a balancing of the equities favors the issuance of an injunction against Defendants.

40.     Unless Defendants are preliminarily enjoined from the foregoing conduct, Merrill Lynch will be irreparably harmed by:

a) disclosure of customer lists and other confidential information which are solely the property of Merrill Lynch and its customers;

b)     loss of confidentiality of customers' records and financial dealings, loss of confidence and trust of customers, loss of goodwill, and loss of business reputation;

c) loss of personnel, damage to office stability, and a threat to the enforcement of reasonable contracts; and

d) present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

41. Merrill Lynch has no adequate remedy at law.

WHEREFORE, Merrill Lynch respectfully requests that:

(1) A Temporary Restraining Order and/or a Preliminary Injunction issue immediately, enjoining Defendants, directly or indirectly, and whether alone or in concert with others, including any officer, agent, employee and/or representative of their new employer, Hilliard Lyons, until hearing and thereafter until further Order of this Court, from:

a) soliciting or otherwise initiating any further contact or communication with any client of Merrill Lynch whom Defendants served, assisted others in serving, or whose name became known to Defendants while in the employ of Merrill Lynch for the purpose of advising said clients of their new affiliation or for the purpose of inviting, encouraging or requesting the transfer of any accounts or business patronage from Merrill Lynch (excluding Defendants' family and relatives);

b) soliciting or otherwise initiating any further contact or communication with any client of Merrill Lynch whose records or information Defendants used in violation of their respective Employment Agreements. This specifically includes any client whom Defendants may have contacted by mail, email, phone or otherwise through the use of any information obtained by Defendants while in the employ of Merrill Lynch (excluding Defendants' family and relatives);

c) using, disclosing, or transmitting for any purpose, including solicitation of said clients, the information contained in the books, records, and documents of Merrill Lynch or concerning its clients, including, but not limited to, (a) the names, addresses, telephone numbers of the clients; (b) financial information, investment objectives, and account information of said clients; and (c) other confidential information, trade secrets, and commercially sensitive materials (excluding Defendants' family and relatives); and

d) destroying, erasing, or otherwise making unavailable for further proceedings in this matter, or in any arbitration proceeding between the parties, any records or documents (including data or information maintained in computer media) in the possession, custody or control of Defendants, their attorneys,

13

or Hilliard Lyons, which were obtained from or contain information derived from any Merrill Lynch records, which pertain to Merrill Lynch clients whom Defendants served or whose names became known to Defendants while employed by Merrill Lynch, or which relate to any of the events alleged in the Complaint in this action.

e) to surrender any electronic devices for the purpose of permanently erasing all Merrill Lynch proprietary business data; and

f) any and all other such acts as this Court deems appropriate for injunctive relief.

## COUNT II
## BREACH OF CONTRACT

42. The allegations of Paragraphs 1 through 41 are incorporated herein by reference with the same force and effect as if set forth in full below.

43. Defendants have violated, <u>inter</u> <u>alia</u>, their Employment Agreements with Merrill Lynch, as well as the Merrill Lynch policies by which they agreed to abide in writing, attached hereto as Exhibits "**A**" through "**D**".

44. Defendants are continuing to violate their contractual obligations and said Merrill Lynch policies.

45. As a consequence of the foregoing, Merrill Lynch has suffered and will continue to suffer financial loss.

## COUNT III
## MISAPPROPRIATION OF TRADE SECRETS
## (Kentucky Uniform Trade Secrets Act, KRS § 365.880, <u>et</u> <u>seq</u>)

46. The allegations of Paragraphs 1 through 45 are incorporated herein by reference with the same force and effect as if set forth in full below.

47. The books and records of Merrill Lynch, the confidential information contained therein, including customers' financial statements, investment objectives, assets and/or securities held by these customers in their Merrill Lynch accounts and other

financial information, are trade secrets of Merrill Lynch subject to protection under the Kentucky Uniform Trade Secrets Act, KRS §§ 365.880, et seq

48. Merrill Lynch's customer information is a compilation of information used in Merrill Lynch's business, which gives Merrill Lynch an opportunity to obtain a competitive advantage over other competitors who do not know or have access to the contents of this customer list, and additional customer related information.

49. This information derives independent economic value by not being accessible, through proper means, to competitors such as Hilliard Lyons, who can profit from its use or disclosure.

50. Merrill Lynch has taken more than reasonable measures under the circumstances to maintain the secrecy of this information, including by having Defendants and other employees sign the referenced Employment Agreements and additional agreements and policies prohibiting use and disclosure of such information outside of Merrill Lynch.

51. Defendants are presently misusing Merrill Lynch's confidential customer information in furtherance of their employment with a direct Merrill Lynch competitor and in violation of their agreement not to do so.

52. The foregoing conduct of Defendants constitutes a misappropriation and misuse of Merrill Lynch's confidential, trade secret information in violation of Kentucky law.

53. As a consequence of the foregoing, Merrill Lynch has suffered and will continue to suffer irreparable harm and loss.

## COUNT IV
## CONVERSION

54. The allegations of Paragraphs 1 through 53 are incorporated herein by reference with the same force and effect as if set forth in full below.

55. The foregoing conduct of Defendants constitutes a conversion of Merrill Lynch's proprietary information and trade secrets.

56. As a consequence of the foregoing, Merrill Lynch has suffered and will continue to suffer financial loss.

## COUNT V
## BREACH OF DUTY OF LOYALTY

57. The allegations of Paragraphs 1 through 56 are incorporated herein by reference with the same force and effect as if set forth in full below.

58. Defendants have violated the common law fiduciary duty of loyalty and the fiduciary duty arising under their respective Employment Agreements and relationships with Merrill Lynch by using Merrill Lynch confidential information, entrusted to them as Merrill Lynch employees, in order to divert business from Merrill Lynch.

59. As a consequence of the foregoing, Merrill Lynch has suffered and will continue to suffer irreparable harm and loss.

## COUNT VI
## UNFAIR COMPETITION

60. The allegations of Paragraphs 1 through 59 are incorporated herein by reference with the same force and effect as if set forth in full below.

61. The foregoing conduct of Defendants constitutes an unfair method of competition.

62. As a consequence of the foregoing, Merrill Lynch has suffered and will continue to suffer financial loss.

WHEREFORE, by virtue of the foregoing acts complained of in Counts II, III, IV, V, and VI, Merrill Lynch demands judgment in its favor and against Defendants Shaun Chelf, Laura Clark, Thomas Kelley and Donald Miller for temporary injunctive relief pending the outcome of an arbitration to be held pursuant to Rule 13804 of the Financial Industry Regulatory Authority Code of Arbitration Procedure.

RESPECTFULLY SUBMITTED this 30th day of September, 2008.

By:   /s/ Jan M. West
    Jan M. West, Esquire
    Jennifer Kaelin Luhrs, Esquire
    GOLDBERG SIMPSON, LLC
    9301 Dayflower Street
    Louisville, KY. 40059
    Telephone: (502) 589-4440
    Fax: (502) 581-1344

    Attorneys for Plaintiff

Of Counsel:

Christopher Koller, Esquire
Beth Delaney, Esquire
RUBIN, FORTUNATO & HARBISON, P.C.
10 South Leopard Road
Paoli, Pennsylvania  19301
Telephone:   (610) 408-2010
Facsimile:    (610) 854-1866
Pro hac vice motions pending

Case 3:08-cv-00523-JHM-DW Document 1 Filed 09/30/08 Page 18 of 18 PageID #: 18